# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## MAY 1998 SESSION

FILED

June 26, 1998

Cecil Crowson, Jr.
Appellate Court Clerk



| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 03C01-9710-CR-00478 |
| Appellee, | ) | |
| | ) | SCOTT COUNTY |
| VS. | ) | |
| | ) | HON. LEE ASBURY, |
| CHARLES DAVID BOWLING, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Rape of a Child) |

**FOR THE APPELLANT:**

**JOHN E. APPMAN**
100 Main Street N.
P.O. Box 99
Jamestown, TN  38556-0099

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**ELLEN H. POLLACK**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN  37243-0493

**WILLIAM PAUL PHILLIPS**
District Attorney General

**JOHN W. GALLOWAY, JR.**
Assistant District Attorney General
P.O. Box 10
Huntsville, TN  37756-0010

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

## OPINION

The defendant, Charles David Bowling, was convicted by a Scott County jury of twelve (12) counts of rape of a child, Class A felonies. The trial court sentenced him to concurrent terms of twenty-five (25) years for each conviction. On appeal, defendant challenges the sufficiency of the convicting evidence. After a thorough review of the record before this Court, we affirm the judgment of the trial court.

## FACTS

In 1989, defendant began living with the victim and her mother, Debbie. The victim, J.M.,[1] was approximately twelve months old at the time. Defendant and Debbie subsequently had a child and decided to build a home together. In the fall of 1992, Debbie began nursing school. Soon thereafter, defendant quit his job and began babysitting the children while Debbie attended school.

For the next two and one-half (2 ½) years, defendant sexually penetrated J.M. vaginally, orally or anally on numerous occasions. The victim, who was eight (8) years old at the time of trial, testified to the various instances of rape at trial. With reference to the particular counts of the indictment, a synopsis of the victim's testimony is as follows:

> Count One: The victim testified that, when she was changing clothes, defendant "came in and he pulled his clothes off and started putting his private in mine." There was testimony from other witnesses that this event occurred on or about April 6, 1995.
>
> Count Two: The victim testified that, on the first occasion that she could remember, defendant followed her into her bedroom and "pulled down my pants and pulled down his pants and he was so quick about it, and I couldn't do nothing about it 'cause I was afraid that he would like hurt me and so I couldn't do anything about it and he just put his private part in mine."
>
> Count Three: The victim described how the defendant orally penetrated her, stating that defendant "made me suck on him - on his private."

---

[1] It is the policy of this Court not to reveal the names of minor victims of sexual abuse.

2

Count Four: The victim testified that around Christmas 1992, she "got on the bed with [defendant] because I did love him and - well, he woke up and he just pulled down my pants and started doing it."

Count Five: The victim described how the defendant put his "private part" in hers while they were standing in the kitchen. "[H]e just took me into the kitchen and he left the lights off and I had to back up against the counter and he - he just pulled down my pants and started doing it."

Count Six: The victim testified that defendant put his penis in her "private part" while they were in the children's playroom.

Count Seven: The victim testified that defendant sexually penetrated her in the "tool shed," stating that defendant "picked me up on [a stool] and pulled down my pants and I had to [scoot down] . . . and he - he got something to stand on so he would be tall enough to put his in mine."

Count Eight: The victim testified that defendant put his penis in her "private" while she was lying on the couch in the living room.

Count Nine: The victim testified that defendant, after discovering the victim jumping on defendant's bed, pulled down the victim's pants and pulled down his own and put his penis in her "private part."

Count Ten: The victim described how defendant put his penis in her "private part" while they were in the bathroom.

Count Eleven: The victim testified that defendant anally penetrated her while they were in his bedroom. She testified that he put his penis in "the back part of my private."

Count Twelve: The victim described how defendant penetrated her in defendant's bedroom early one morning after her mother left for school. She testified that, after he affirmed that the victim's younger sister was asleep, he "just started doing it."

In early April 1995, Debbie arrived home from school and found J.M. in the bathroom. J.M. was "tearful" and complained that her "butt [hurt] real bad." Upon examining her daughter, Debbie "noticed that [the victim] was very swollen, she was very red, she was almost purple she was so red, and [Debbie] also noticed what [she] thought was a vaginal discharge."

On April 10, approximately one week later, J.M. informed Debbie that the defendant had been sexually abusing her. J.M. was subsequently examined by a nurse practitioner and a gynecologist. Both examinations revealed findings consistent with vaginal penetration.

When the police attempted to arrest defendant, they found him in his bedroom with a gun. He had taken an overdose of aspirin and Antivert and

informed the police that he "wasn't going to allow [them] to arrest him, he was going to die." Eventually, the police were able to subdue the defendant and take him to a hospital.

Defendant testified on his own behalf at trial. He denied having a sexual relationship with J.M. and suggested that most of the state's witnesses "lied about everything." He stated that he attempted suicide because Debbie ended their relationship. He claimed that J.M. witnessed Debbie and him having sexual relations, thus giving J.M. the knowledge to testify as to the specifics of the alleged sexual misconduct.

Defendant was charged with twenty (20) counts of rape of a child. Counts Two through Twenty were identical and alleged that the defendant "on or about Aug.-Sept. 1992 to April 5, 1995 . . . did unlawfully, feloniously, intentionally, knowingly, and recklessly sexually penetrate [the victim], who was then less than 13 years of age." Count One also alleged the same facts but specified the date of April 6, 1995. At the conclusion of the state's proof at trial, the state made an election of twelve (12) offenses and dismissed eight (8) counts. The state's election was written and specifically described twelve (12) separate incidences of sexual penetration.

The jury returned guilty verdicts on all twelve (12) counts of rape of a child. The trial court sentenced defendant to concurrent terms of twenty-five (25) years for each conviction. Defendant now brings this appeal as of right.


## SUFFICIENCY OF THE EVIDENCE


Defendant's sole issue on appeal is whether the evidence is sufficient to sustain the jury's findings of guilt. In making this argument, defendant points to specific portions of the victim's testimony detailing the instances of sexual abuse. He contends that some of the acts described by the victim are "physically impossible." He further suggests the victim's possible motives for fabricating her testimony. Therefore, he argues that this Court, in determining the sufficiency of the

4

evidence, should disregard the victim's testimony.

**A.**

When an appellant challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992); Tenn. R. App. P. 13(e). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). This Court will not reweigh the evidence, reevaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Furthermore, in a criminal trial, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

Once approved by the trial court, a jury verdict accredits the witnesses presented by the state and resolves all conflicts in favor of the state. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

**B.**

The defendant contends that the victim's testimony was unbelievable. It is well-established that the credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Furthermore, a full review of the victim's testimony reveals that she related intimate knowledge of each offense of which defendant was convicted.

Moreover, the physical evidence corroborated the victim's testimony. A

5

gynecologist and nurse practitioner both testified that their physical examinations indicated that the victim's hymen was not intact. Therefore, both concluded that the victim's vagina had been penetrated.

It was for the jury to determine whether the victim was truthful. The jury's verdict reflects that it found the victim to have been truthful. We are not at liberty to conclude otherwise.

We find that there is sufficient evidence from which a rational trier of fact could find defendant guilty of each count of rape of a child beyond a reasonable doubt. Accordingly, the judgment of the trial court is affirmed.

_____
**JOE G. RILEY, JUDGE**


**CONCUR:**


_____
**JOSEPH M. TIPTON, JUDGE**


_____
**CURWOOD WITT, JUDGE**